UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAXIME HODGES, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| DRYSHIPS INC., GEORGE ECONOMOU and ANTHONY KANDYLIDIS, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Maxime Hodges ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding DryShips Inc. ("DryShips" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired DryShips securities between

1

June 8, 2016 and July 12, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      DryShips Inc. owns and operates ocean going cargo vessels worldwide. It operates through two segments, Drybulk and Offshore Support. The Drybulk segment offers drybulk commodities transportation services for the steel, electric utility, construction, and agri-food industries. The Offshore Support segment provides its services to the global offshore energy industry.

3.      Founded in 2004, the Company is headquartered in Athens, Greece.  DryShips' stock trades on the NASDAQ under the ticker symbol "DRYS."

4.      In a series of transactions beginning on or around June 8, 2016, DryShips raised hundreds of millions of dollars in capital by selling newly-issued shares directly to Kalani Investments Ltd. ("Kalani"), a British Virgin Islands firm, at a discount to the stock-market price.  This influx of capital enabled DryShips to roughly double the size of its fleet to 36 vessels.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants engaged in a systemic stock-manipulation scheme to artificially inflate DryShips' share price; (ii) DryShips' transactions with Kalani were an illegal capital-raising scheme, due in part to Kalani's failure to register as an underwriter with the SEC; and (iii) as a result of the foregoing, DryShips' public statements were materially false and misleading at all relevant times.

6.      On July 13, 2017, *The Wall Street Journal* published an article entitled "A Shipping Company's Bizarre Stock Maneuvers Create High Seas Intrigue". The article described in detail the various transactions between DryShips and Kalani—namely, how DryShips' influxes of cash stoked investor interest in DryShips, enabling the Company to issue still more shares, which it then continued to sell to Kalani. Kalani ultimately acquired securities convertible to more than $626 million in DryShips common stock, roughly 100 times DryShips' stock market value as of early November 2016. Meanwhile, to counter share value dilution and avoid NASDAQ delisting, DryShips executed a series of reverse stock splits.

7.      As *The Wall Street Journal* reported, however, because Kalani purchased DryShips stock with the intention of reselling, the transactions between DryShips and Kalani essentially constituted "pseudo-underwriting", with Kalani in the position of the underwriter of a *de facto* public offering. Kalani, however, never registered as an underwriter with the SEC, in violation of the federal securities laws. Moreover, the issuance of tens of millions of new DryShips shares significantly diluted shareholder value, while the frequent and sharp spikes and drops in DryShip's common share price, caused by DryShip's illegal capital-raising, cost the Company's shareholders hundreds of millions of dollars.

8.      Since November 2016, DryShips' share price has fallen approximately 99.9%.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). DryShips' shares trade on the NASDAQ, located within this Judicial District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired DryShips securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant DryShips is headquartered in Greece, with principal executive offices located at 109 Kifissias Avenue and Sina Street, Marousi, Athens, J3 151 24.  DryShips' shares trade on the NASDAQ under the ticker symbol "DRYS."

16.     Defendant George Economou ("Economou") founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

17.     Defendant Anthony Kandylidis ("Kandylidis") served as the Company's Chief Financial Officer ("CFO") and President.

18.     The defendants referenced above in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

<u>**Background**</u>

19.     DryShips Inc. owns and operates ocean going cargo vessels worldwide. It operates through two segments, Drybulk and Offshore Support. The Drybulk segment offers drybulk commodities transportation services for the steel, electric utility, construction, and agri-food industries. The Offshore Support segment provides its services to the global offshore energy industry.

<u>**Materially False and Misleading Statements Issued During the Class Period**</u>

20.     The Class Period begins on June 8, 2016, when DryShips issued a press release and filed a Form 6-K with the SEC, stating, in relevant part:

> **June 8, 2016,** Athens, Greece. DryShips Inc. (NASDAQ:DRYS), or the Company, an international owner of drybulk carriers and offshore support vessels, announced today that the Company has entered into a Securities Purchase Agreement with an institutional investor for the sale of 5,000 newly designated Series C Convertible Preferred Shares, warrants to purchase 5,000 Series C Convertible Preferred Shares and 148,998 common shares.
>
> The securities will be issued to the investor through a registered direct offering.
>
> The Company estimates that the net proceeds from the sale of the securities, after deducting fees and expenses, will be approximately $5 million. The Company may further receive up to an aggregate of $5 million if all of the warrants are exercised, for total proceeds of $10 million.

21.     On August 8, 2016, DryShips issued a press release entitled "DryShips Inc. Reports Financial and Operating Results for the Second Quarter 2016," announcing the

Company's financial and operating results for the quarter ended June 30, 2016.  For the quarter, DryShips reported a net loss of $9.11 million, or $22,848 per diluted share, on revenue of $13.18 million, compared to a net loss of $1.44 billion, or $3,645,600 per diluted share, on revenue of $403.18 million for the same period in the prior year.

22.     On November 9, 2016, DryShips issued a press release entitled "DryShips Inc. Reports Financial and Operating Results for the Third Quarter 2016," announcing the Company's financial and operating results for the quarter ended September 30, 2016.  For the quarter, DryShips reported a net loss of $5.25 million, or $8,624 per diluted share, on revenue of $12.09 million, compared to a net loss of $819.96 million, or $2,066,400 per diluted share, on revenue of $50.77 million for the same period in the prior year.

23.     On November 17, 2016, DryShips issued a press release and filed a Form 6-K with the SEC, stating, in relevant part:

> **November 17, 2016,** Athens, Greece — DryShips Inc. (NASDAQ:DRYS) (the "Company"), an international owner of drybulk carriers and offshore support vessels, announced today that the Company has entered into a Securities Purchase Agreement with Kalani Investments Limited, an entity organized in the British Virgin Islands ("Kalani") and that is not affiliated with the Company, for the sale of 20,000 newly designated Series E-1 Convertible Preferred Shares, preferred warrants to purchase 30,000 Series E-1 Convertible Preferred Shares, preferred warrants to purchase 50,000 newly designated Series E-2 Convertible Preferred Shares, prepaid warrants to initially purchase an aggregate of 372,874 common shares (with the number of common shares issuable subject to adjustment as described therein), and 100 common shares. Kalani is entitled to receive 10,000 common shares but is electing to receive 100 common shares and the prepaid warrant will be immediately exercisable for 9,900 common shares.
>
> The securities will be issued to Kalani through a registered direct offering pursuant to a Form F-3 registration statement the Company currently has on file with the U.S. Securities & Exchange Commission ("SEC").
>
> The gross proceeds from the sale of the securities will be approximately $20 million.  The Company may further receive up to an aggregate of $80 million if all of the preferred warrants are exercised, for total proceeds of $100 million. The Company intends to use the net proceeds from the sale of the offered securities for

6

general corporate purposes and/or to repay indebtedness under one or more of our existing credit facilities and/or to repay indebtedness incurred under the Revolving Facility with Sifnos Shareholders Inc., an entity controlled by our Chairman, President and Chief Executive Officer, Mr. George Economou, although the Company has no present agreements to do so.

Our common shares are listed on the Nasdaq Capital Market under the symbol "DRYS." Currently the Company has 1,137,712 shares (including treasury stock) issued and oustanding. On November 15, 2016, the last reported sale price of our common stock was $73.00 per share. The Series E-1 Convertible Preferred Shares, Series E-2 Convertible Preferred Shares, Series E-1 Preferred Warrants, Series E-2 Preferred Warrants, Series F-1 Common Warrant and Series F-2 Common Warrant will not be listed on any national securities exchange. There is no established public trading market for the Series E-1 Convertible Preferred Shares, Series E- 2 Convertible Preferred Shares, Series E-1 Preferred Warrants, Series E-2 Preferred Warrants, Series F-1 Common Warrant or Series F-2 Common Warrant, and the Company does not expect a market to develop.  The Company expects to issue the shares to Kalani on or about November 21, 2016.

24.     On December 27, 2016, DryShips issued a press release and filed a Form 6-K

with the SEC, stating, in relevant part:

**December 27, 2016**, Athens, Greece — DryShips Inc. (NASDAQ:DRYS) (the "Company"), an international owner of drybulk carriers and offshore support vessels, announced today that it has entered into an agreement with Kalani Investments Limited, an entity organized in the British Virgin Islands ("Kalani") and that is not affiliated with the Company. Under the agreement the Company may sell up to $200.0 million of its common stock to Kalani over a period of 24 months, subject to certain limitations. Proceeds from any sales of common stock will be used for general corporate purposes.

Kalani has no right to require any sales and is obligated to purchase the common stock as directed by the Company, subject to certain limitations set forth in the agreement. In consideration for entering into the agreement, the Company has agreed to issue up to $1.5 million of its common stock to Kalani as a commitment fee. No warrants, derivatives, or other share classes are associated with this agreement.

Mr. George Economou, Chairman and CEO commented:

"We are very excited to now have the ability to raise up to $200 million of equity having full control of the timing. Together with available liquidity in excess of $120 million we are now in a position to commence the process of re-building the Company's fleet and earnings capacity and pursuing investments in various

shipping segments as they arise. We are already evaluating a number of opportunities that we hope will materialize in the very near future."

25.     On February 17, 2017, DryShips issued a press release and filed a Form 6-K with the SEC, stating, in relevant part:

**February 17, 2017,** Athens, Greece — DryShips Inc. (NASDAQ:DRYS) (the "Company"), a diversified owner of ocean going cargo vessels, announced today that it has entered into an agreement with Kalani Investments Limited, an entity that is not affiliated with the Company. Under the agreement the Company may sell up to $200.0 million of its common stock to Kalani over a period of 24 months, subject to certain limitations. Proceeds from any sales of common stock will be used for general corporate purposes.

Kalani has no right to require any sales and is obligated to purchase the common stock as directed by the Company, subject to certain limitations set forth in the agreement. In consideration for entering into the agreement, the Company has agreed to issue up to $1.5 million of its common stock to Kalani as a commitment fee. No warrants, derivatives, or other share classes are associated with this agreement.

26.     On March 13, 2017, DryShips filed an annual report on Form 20-F with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 20-F").  For the quarter, the Company reported a net loss of $77.52 million, or $7,582 per diluted share, on revenue of $12.84 million, compared to a net loss of $527.62 million, or $1,327,200 per diluted share, on revenue of $23.77 million for the same period in the prior year.  For 2016, the Company reported a net loss of $198.69 million, or $464.76 per diluted share, on revenue of $51.93 million, compared to a net loss of $2.81 billion, or $51,389 per diluted share, on revenue of $969.83 million for 2015.

27.     The 2016 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the financial information contained in the 2016 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On April 3, 2017, DryShips filed a Form 6-K with the SEC, stating, in relevant

part:

> On April 3, 2017, DryShips Inc. (the "Company") entered into a Common Stock
> Purchase Agreement (the "Purchase Agreement") with Kalani Investments
> Limited ("Kalani"), pursuant to which the Company may sell up to $226.4 million
> of shares (the "Offered Shares") of its common stock, par value $0.01 to Kalani
> over a period of 24 months, subject to certain limitations. In consideration for
> entering into the Purchase Agreement, the Company has also agreed to issue up to
> $1.5 million of shares of its common stock, par value $0.01 to Kalani as a
> commitment fee (the "Commitment Shares," and together with the Offered
> Shares, the "Shares").
>
> The Shares will be offered and sold pursuant to a shelf registration statement on
> Form F-3 (File No. 333-202821) that was filed with the U.S. Securities and
> Exchange Commission ("SEC") and became effective on May 7, 2015 and the
> prospectus supplement relating to the Shares filed with the SEC on April 3, 2017.

29.     On May 10, 2017, DryShips issued a press release entitled "DryShips Inc. Reports

Financial and Operating Results for the First Quarter 2017," announcing the Company's

financial and operating results for the quarter ended March 31, 2017.  For the quarter, DryShips

reported a net loss of $10.71 million, or $99.60 per diluted share, on revenue of $11.81 million,

compared to a net loss of $106.82 million, or $269,472 per diluted share, on revenue of $11.86

million for the same period in the prior year.

30.     The statements referenced in ¶¶ 20-29 were materially false and misleading

because defendants made false and/or misleading statements, as well as failed to disclose

material adverse facts about the Company's business, operational and compliance policies.

Specifically, defendants made false and/or misleading statements and/or failed to disclose that:

(i) Defendants engaged in a systemic stock-manipulation scheme to artificially inflate DryShips'

share price; (ii) DryShips' transactions with Kalani were an illegal capital-raising scheme, due in

part to Kalani's failure to register as an underwriter with the SEC; and (iii) as a result of the

foregoing, DryShips' public statements were materially false and misleading at all relevant times.

31.     On July 13, 2017, *The Wall Street Journal* published an article describing in detail the various transactions between DryShips and Kalani—namely: (ii) how the Company used its stock sales to Kalani to skirt federal securities laws with respect to public offering and illegally raise capital; and (ii) the impact of these transactions on DryShips' share price, which yielded substantial profits for the Defendants and Kalani while erasing hundreds of millions of dollars of shareholder value. The article stated, in part:

> When a company's stock drops 99.9% in six months, there's probably a story there. When, despite that carnage, the company's assets double during the same period, even more so.
>
> And when 1.68 million of the company's shares held early last year equal exactly one share today, well, what is going on?
>
> The locus of these bizarre doings is DryShips Inc., a Greek carrier that has been tracing one of the wildest rides in recent stock-market history, ***causing half a billion dollars of traders' money to vanish*** and, it appears, ***making two wealthy men wealthier***.
>
> . . .
>
> But [investors] as they were buying, the company was creating vast numbers of new shares. These it was selling at a discount to an obscure British Virgin Islands firm, which was quickly unloading many or all of the new shares.
>
> Immediately after the stock's soaring November flight, it plunged back to earth.
>
> Since then, DryShips has repeatedly printed huge numbers of new shares and sold them to the British Virgin Islands firm, on such a scale that virtually every share in existence today has been created since November.
>
> In an apparent effort to counter the downward pressure that this new supply of shares put on the price, DryShips used another technique: reverse stock splits.
>
> . . .
>
> On June 8, 2016, DryShips sold Kalani securities convertible into $5 million worth of new DryShips common shares, which was equivalent to a little under

10% of the shipping company's market value then. It was a small foretaste of what was to come.

Kalani didn't report a 5% or more stock ownership, as U.S. regulations require, indicating it rapidly sold many of these new DryShips shares. And in succeeding weeks, DryShips' stock tumbled.

By September, DryShips was preparing paperwork to do two things: execute a reverse stock split and issue a far larger batch of securities to Kalani.

Issuing so many new shares would normally be unrealistic for a company with a tumbling stock, but on Nov. 9 *DryShips' stock suddenly tripled, ending the day up 133%. Nasdaq temporarily halted trading four sessions later with the stock up 1,500%*.

. . .

DryShips shares by this time were plunging, thanks to the news that many more of them were being created.

Even so, investor chat rooms lit up with speculation that another epic rally could be in store, given the sudden inflow of cash to the company's coffers. Mentions of DryShips on an investing site called StockTwits, which had totaled only about 77 a week before the November rally, soared to an average of about 18,000 a week over the following four months.

The enthusiasm allowed DryShips to create and sell still more shares. In three additional deals with Kalani, the shipper agreed to sell it securities convertible into $626.4 million of new DryShips common shares.

That was equal to about *100 times DryShips' stock-market value* in early November.

. . .

Legal experts said the quick sales raise questions for regulators. "If [Kalani is] buying it with the intent to resell, then they're acting as an underwriter and this is a public offering," said Jill Fisch, a University of Pennsylvania law professor who specializes in securities regulation. In an underwriting, a licensed entity, normally a bank, sells shares to the public and gives the proceeds to the company.

James Angel, a financial-markets expert at Georgetown University, said the deal sounds like a "pseudo-underwriting."

Kalani isn't registered with the the Securities and Exchange Commission as an underwriter. That means it is possible "***both the company and the intermediary are on the hook for violating securities laws***," Ms. Fisch said.

32.     DryShips' share price has fallen approximately ***$81,759***, or ***99.9%*** per share from its class period high of $81,760 on November 15, 2016, and now trades at roughly $1.00 per share.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired DryShips securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, DryShips securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by DryShips or its transfer agent and may be notified

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of DryShips;

- whether the Individual Defendants caused DryShips to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of DryShips securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- DryShips securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold DryShips securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of DryShips securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire DryShips securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for DryShips securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about DryShips' finances and business prospects.

47.     By virtue of their positions at DryShips, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of DryShips, the Individual Defendants had knowledge of the details of DryShips' internal affairs.

49.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of DryShips. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to DryShips' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements,

the market price of DryShips securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning DryShips's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired DryShips securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

50.     During the Class Period, DryShips securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of DryShips securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of DryShips securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of DryShips securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of DryShips, and conducted and participated, directly and indirectly, in the conduct of DryShips' business affairs.  Because of their senior positions, they knew the adverse non-public information about DryShips' misstatement of income and expenses and false financial statements.

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to DryShips' financial condition and results of operations, and to correct promptly any public statements issued by DryShips which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which DryShips disseminated in the marketplace during the Class Period concerning DryShips' results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause DryShips to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of DryShips within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of DryShips securities.

57.     Each of the Individual Defendants, therefore, acted as a controlling person of DryShips.  By reason of their senior management positions and/or being directors of DryShips, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, DryShips to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of DryShips and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by DryShips.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 14, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***